

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.  1:18-CR-38-TH** |
| | § | |
| **JONATHAN MATTHEW TORRES** | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING ADJUDICATION OF GUILT AS TO COUNT ONE

This case is before the Court following a bench trial as to Count One charging Jonathan Matthew Torres with violation of 18 U.S.C. § 844(i) (Use of an Explosive to Cause Property Damage). A trial to the Court was held on October 3, 2019 with the government's consent after Mr. Torres waived his right to trial by jury.  *See Reporter's Transcript of Bench Trial* at 4-5 [Clerk's Docket No. 61].   In accordance with Rule 23(a), a written waiver of the right to trial by jury was filed with the clerk on December 4, 2019.  *See Waiver* [Clerk's Docket No. 62].  Both sides rested after having the opportunity to present evidence and argument for the Court's consideration.  *See Reporter's Transcript of Bench Trial* at 52-53 [Clerk's Docket No. 61]; *see also Minute Entry* [Clerk's Docket No. 54].  Thereafter, the defense moved for entry of judgment of acquittal by written motion pursuant to Federal Rule of Criminal Procedure 29(a), which this Court denied by memorandum order [Clerk's Docket No. 63] filed December 6, 2019.

## I.  FINDING AS TO GUILT

Defendant Jonathan Matthew Torres is **ADJUDGED GUILTY** of violating 18 U.S.C. § 844(i) as charged in Count One of the *First Superseding Indictment* [Clerk's Docket No. 41].  The Court now enters these findings of fact and conclusions of law pursuant to Federal Rule of Criminal Procedure 23(c).

## II.  FACTUAL & PROCEDURAL BACKGROUND

Jonathan Matthew Torres was charged in a three-count indictment alleging violations of 18 U.S.C. § 844(i) (Use of an Explosive to Cause Property Damage);  26 U.S.C. § 5861 (Possession of an Unregistered Destructive Device); and 18 U.S.C. § 876(c) (Mailing a Threatening Communication) on June 6, 2018.  *Indictment*  [Clerk's Docket No. 13].

Defense counsel motioned the Court to order a psychiatric exam of Mr. Torres to determine whether he was competent to stand trial.  *Motion for Psychiatric Exam* [Clerk's Docket No. 16].  A psychiatric report was submitted to the Court on December 27, 2018, and Mr. Torres was subsequently determined competent to stand trial.  *Forensic Report* [Clerk's Docket No. 18]; *Order* [Clerk's Docket No. 22].  He was arraigned and pled not guilty to the charges February 12, 2019.  *Minute Entry* [Clerk's Docket No. 23].

A three-count superseding indictment was returned by the grand jury on September 4, 2019. *First Superseding Indictment* [Clerk's Docket No. 41].  The superseding indictment modified the charging

language with respect to the third element of the Section 844(i) violation charged in Count One.  In addition to alleging the target property was "used in interstate commerce," the superseding indictment charged Mr. Torres with targeting property "used in an activity affecting interstate commerce."  As addressed in this Court's *Memorandum Order Denying Defendant's Rule 29(a) Motion for Acquittal* [Clerk's Docket No. 63], Section 844(i) protects two types of property: (1) property "used" in interstate or foreign commerce such that the property is an instrumentality of commerce (such as airports, train depots, and freight stations); and (2) property "used in any activity affecting" interstate or foreign commerce, which covers non-instrumentality properties that have a sufficient effect on interstate commerce to support federal protection under the Commerce Clause.  *See United States v. Rea*, 300 F.3d 952, 961 (8th Cir. 2002).  While all instrumentalities of commerce by definition fall within the class of properties "used in an activity affecting" commerce, the reverse is not true.  This is because the second category of properties includes non-instrumentality properties that nevertheless affect commerce.  *See United States v. Keen*, 508 F.2d 986, 990 (9th Cir. 1974)(not necessary to prove property an instrumentality of interstate commerce where government also charged and proved damaged property was used in activity affecting interstate commerce).

The Court previously held that the building identified in the indictment is not an instrumentality of interstate or foreign commerce within the meaning of the first category of property protected by Section 844(i).  For this reason, these findings and conclusions as to guilt are limited to the second category of properties protected by Sections 844(i): those "used in any activity affecting" interstate commerce.

Mr. Torres waived personal appearance for re-arraignment and entered a plea of not guilty to

the three-count superseding indictment on September 11, 2019.  *Waiver* [Clerk's Docket No. 45].

Three important matters were accomplished when Mr. Torres appeared before this Court on October 3, 2019.  First, Mr. Torres changed his plea to guilty as to Count Two charging him with violation of 26 U.S.C. § 5861 (Possession of an Unregistered Destructive Device).  *Clerk's Minutes* [Clerk's Docket No. 51].  Secondly, the government orally moved to dismiss Count Three of the superseding indictment charging Mr. Torres with violation of 18 U.S.C. § 876(c) (Mailing a Threatening Communication).  And thirdly, this Court convened a bench trial as to Count One charging him with violation of 18 U.S.C. § 844(i) (Use of an Explosive to Cause Property Damage).  *Clerk's Minutes* [Clerk's Docket No. 54].

Thereafter, the defense moved for entry of judgment of acquittal as to Count One, which this Court denied.  *Memorandum Order Denying Defendant's Rule 29(a) Motion for Acquittal* [Clerk's Docket No. 63].  The government then submitted proposed findings of fact and conclusions of law, to which the defense did not respond.  *Notice*  [Clerk's Docket No. 58].

## III.  FINDINGS OF FACT

1.      On April 26, 2018, law enforcement was notified of a suspicious package found at a Starbucks store located on Dowlen Road in Beaumont, Texas.  *See Reporter's Transcript of Bench Trial* at 7 [Clerk's Docket No. 61].

2.      The suspicious package found at Starbucks on April 26, 2018 was a United States Postal Service

priority mail box.  Attached to the inside flap of the parcel was a white string, held to the lid by a black releasable zip tie.  The string was attached to a plastic piece of cheese that was affixed to a Tomcat brand mousetrap.  The mousetrap had a hole drilled through one end.  Covering a portion of that hole was a 5.56 mm round of ammunition glued to the mousetrap.  The cartridge was stamped LC-14 indicating it was manufactured by Lake City Ammunition in 2014. The ammunition was placed over the hole in a manner to expose the primer of the ammunition. The end of the 5.56 mm round that contained the projectile was pointed at a canister of mixed Tannerite.  Taped around the canister of Tannerite were packages of screws and nails.  Inside the parcel was a note with black peel-and-stick letters that read: "HAJI DIE . . . USA . . . –JH." *See Reporter's Transcript of Bench Trial* at 7-11; 34 [Clerk's Docket No. 61].

3.      Tannerite is the brand name for binary explosive targets used for firearm practice.  Tannerite is comprised of ammonium nitrate and aluminum.  Tannerite is explosive once the ammonium nitrate and aluminum are mixed.  Tannerite detonates when a firearm releases a high velocity projectile into a container of the mixed substances.  *See Reporter's Transcript of Bench Trial* at 8-9; 17; 36 [Clerk's Docket No. 61].

4.      The Beaumont Police Department received a postcard on April 27, 2018 with black peel-and-stick letters affixed thereto reading: "Do you want BMT to Become another Austin . . . J Hancock."  The letters were similar to those used on the note found with the Starbucks device. It had a Patriotic Spiral Forever stamp affixed to it.  In March 2018 a series of package bombs exploded in the Austin, Texas area resulting in two fatalities and additional injuries.  The investigation into those explosions concluded the bombings were perpetrated by Mark Anthony

Conditt, who died by an explosion of the vehicle he was operating after he was pulled over by law enforcement.  *See Reporter's Transcript of Bench Trial* at 10-11 [Clerk's Docket No. 61].

5.      In the morning hours of May 10, 2018 law enforcement was notified that an explosion occurred at the St. Stephen's Episcopal Church office building located at 4090 Delaware Street, Beaumont, Texas.  Investigators determined that the explosion occurred at approximately 3:00 a.m. on May 10, 2018 based on witness statements.  *See Reporter's Transcript of Bench Trial* at 12-15 [Clerk's Docket No. 61].

6.      At the time of the explosion there was a sign on the front of the St. Stephen's Episcopal Church office building identifying the building as the "Office."  There was also a hanging sign near the shrubbery that read "Office 4090."  *See Reporter's Excerpt Transcript of Motion to Dismiss* at 14-16 [Clerk's Docket No. 46].[1]

7.      The property located at 4090 Delaware Street, Beaumont, Texas is entirely within the Eastern District of Texas.

8.      Responding law enforcement personnel recovered pieces of a United States Postal Service priority mail box, a piece of white string, nails and screws (including # 10 x ½ inch size sheet

---

[1]  All parties stipulated to the admissibility at trial of the sworn testimony of Reverend Steven Balke presented in open court on July 23, 2019.  *See Reporter's Transcript of Bench Trial* at 2-4 [Clerk's Docket No. 61]. The transcript was offered at trial as Government's Exhibit 23 with no objection.  *See Government's Exhibit List* [Clerk's Docket No. 56].  The testimony was originally presented at an evidentiary hearing convened to hear defendant's pretrial motions seeking dismissal, during which the witness was sworn and both sides had the opportunity to question him.  *See Reporter's Excerpt Transcript of Motion to Dismiss* [Clerk's Docket No. 46].

metal screws), pieces of a Tomcat brand mousetrap, and an empty Tannerite exploding target tinfoil packet of aluminum powder. *See Reporter's Transcript of Bench Trial* at 12; 16; 32; 33; 37 [Clerk's Docket No. 61].

9.      Screws and nails found at the scene of the explosion were forensically analyzed. Traces of nitrate, ammonium and potassium ions were found thereon. These finding indicate that ammonium nitrate or potassium nitrate could have been used as an explosive, which is consistent with a Tannerite explosion. *See Reporter's Transcript of Bench Trial* at 16; 17 [Clerk's Docket No. 61].

10.     The device placed at 4090 Delaware Beaumont, Texas on May 10, 2018 contained an oxidizing or combustible unit in such proportions, quantities, or packaging that ignition by fire, friction, concussion, percussion, or detonation of the compound would cause an explosion. *See Reporter's Transcript of Bench Trial* at 17-18 [Clerk's Docket No. 61].

11.     The building located at 4090 Delaware Beaumont, Texas sustained the following damage as a result of the explosion device: a window was broken, exterior brick wall was damaged and shrubbery was impacted. *See Reporter's Transcript of Bench Trial* at 12-15 [Clerk's Docket No. 61].

12.     On May 11, 2018 the Beaumont Police Department received a DC Comics postcard depicting an image from the cover of a "V for Vendetta" comic book that was part of an identifiable 100-postcard set. The postcard read: "WOULD YOU LIKE TO PLAY A GAME . . . JH". The postcard was addressed to "Beaumont PD, 255 College St., Beaumont, TX 77701." The

postage affixed thereto was a U.S. Flag Forever stamp.  *See Government's Trial Exhibit 5A, 5B; see also Reporter's Transcript of Bench Trial* at 18; 39-41 [Clerk's Docket No. 61].

13.     On May 14, 2018 the Beaumont Police Department received a postcard with an image of the "Creature from the Black Lagoon" that read:  "There were two others.  Did you not get them?"  This postcard was also signed "JH."  This postcard was addressed to "Beaumont PD, 225 College St., Beaumont, TX 77701."  The address of the Beaumont Police Department is in fact 255 College Street, not 225 College Street..  It had a Patriotic Spiral Forever stamp affixed to it.  *See Government's Trial Exhibit 6A, 6B; see also Reporter's Transcript of Bench Trial* at 18-19 [Clerk's Docket No. 61].

14.     On May 16, 2018 the Beaumont Police Department received a postcard which read: "none of these have been deemed a credible threat" and was signed "JH."  The potage affixed thereto was a U.S. Flag Forever stamp.  The Beaumont Police Department held a press conference on May 10, 2018 and thanked the public for reporting suspicious packages.  At that conference a statement was made by law enforcement advising that "None of these [reports] have been deemed a credible threat."  The image on the postcard depicted a comic book cover from "The Atom" series.  It was determined that this postcard was a part of the same 100 postcard set as the "V for Vendetta" postcard received by the Beaumont Police Department on May 11, 2018.  It was postmarked May 11, 2018.  *See Government's Trial Exhibit 7A, 7B;  see also Reporter's Transcript of Bench Trial* at 19-20; 39-41 [Clerk's Docket No. 61].

15.     A United States Postal Service inspector asked employees to report any information relevant to

the mailing of these or similar postcards.  A mail handler at the Tobe Hahn Post Office in Beaumont, Texas identified Jonathan Torres as regularly mailing science fiction postcards.  This person indicated such items were currently being processed through the Tobe Hahn facility.  A search warrant was obtained pursuant to which approximately twenty-five postcards were seized from the Postal Service.  *See Reporter's Transcript of Bench Trial* at 20-22 [Clerk's Docket No. 61].

16.    The postcards seized from the Postal Service were signed "Johnny Smiles" and "Le White Rabbit."  There was also a Facebook account address (jonathan.smiles.9) on the postcards. Public internet searches revealed Facebook accounts in the names of "Jonathan Towers" and "Johnny Smiles" that could be traced to Mr. Torres.  *See Reporter's Transcript of Bench Trial* at 22; 24 [Clerk's Docket No. 61].

17.    Twenty-four hour surveillance was placed on Mr. Torres.  During the course of the surveillance the team observed a stack of postcards in Mr. Torres's vehicle visible through the window when it was parked in a public place.  The team also witnessed Mr. Torres mailing postcards on twice on May 21, 2018.  *See Reporter's Transcript of Bench Trial* at 23 [Clerk's Docket No. 61].

18.    One of the postcards obtained from the United States Postal Service pursuant to the warrant had a Patriotic Spiral Forever stamp affixed to it as postage.  The seized postcard and the postcard received by the Beaumont Police Department on April 27, 2018 following the Starbucks incident were sent to the FBI's Questioned Documents Unit.  The Questioned Documents Unit compared the stamp fibers and determined that the two stamps were from the

same book of stamps.  *See Reporter's Transcript of Bench Trial* at 24-26; 43-46 [Clerk's Docket No. 61].

19.    A search warrant was obtained for the residence of Mr. Torres at 4410 El Paso Street in Beaumont, Texas.  The search warrant was executed on May 24, 2018.  The following items were seized from the residence:

- Several priority mail boxes;

- A Tomcat brand rat trap with a hole drilled through it in a manner similar to the Tomcat brand mousetrap found at Starbucks on April 26, 2018;

- Various sizes of black zip ties with a unique releasable feature;

- An empty bag of #12 x 3/4 inch screws;

- Empty tube of glue;

- 5.56 mm Lake City brand ammunition stamped LC-14;

- One M&P 15, 5.56 caliber rifle;

- Several Tannerite exploding target kits;

- Box of 100 DC Comics postcards containing 97 of the original 100 postcards;

- One marked-up DC Comics postcard depicting "The Riddler";

- A book of U.S. Flag Forever stamps;

- Computer; and

- Framed *Rolling Stone* magazine cover depicting Dzhokhar Tsarnaev, who was convicted for the 2013 bombing at the Boston Marathon.

*See Reporter's Transcript of Bench Trial* at 26-34; 35-36; 38; 40; 48 [Clerk's Docket No. 61].

20.   The book of U.S. Flag Forever stamps seized from the residence was sent to the FBI's Questioned Documents Unit.  The Unit compared the stamp fibers in the book to the fibers in the stamp affixed to the postcard depicting "The Atom" series received by the Beaumont Police Department on May 16, 2018.  The Questioned Documents Unit determined that the U.S. Flag Forever stamp affixed to the postcard depicting "The Atom"postcard came from the book of stamps seized from defendant's home.  *See Reporter's Transcript of Bench Trial* at 43-46 [Clerk's Docket No. 61].

21.   A subpoena was issued to the Home Depot seeking identification of purchases made by Mr. Torres.  The Home Depot provided a receipt indicating Mr. Torres purchased Phillips #10 x ½ inch sheet metal screws on April 20, 2018 using his debit card.  This type of screw was found at the scene of the St. Stephen's explosion.  *See Reporter's Transcript of Bench Trial* at 32-33 [Clerk's Docket No. 61].

22.   A forensic examination was conducted of the computer found in the residence of Mr. Torres.  Several ".ASD" or  automatically saved files were recovered.  One of the recovered .ASD files was a document that had the address "225 College Street, Beaumont, TX 77701, BMT PD" typed into it.  This is the incorrect address for the Beaumont Police Department that was on the "Creature from the Black lagoon" postcard received May 14, 2018.  The file had a creation date of April 30, 2018 and the author was identified as "jonny torres."  Another recovered ".ASD" file contained the following information: "none of those calls have been deemed a

-11-

credible threat," language similar to that on "The Atom" postcard received by law enforcement that was postmarked May 11, 2018.   This file had a creation date of May 11, 2018 and was also identified as authored by "jonny torres."  *See Reporter's Transcript of Bench Trial* at 46-48 [Clerk's Docket No. 61].

23.    The building located at 4090 Delaware that was damaged by explosion on May 10, 2018 is the St. Stephen's Episcopal Church office building.  *See Reporter's Excerpt Transcript of Motion to Dismiss* at 7; 14-16 [Clerk's Docket No. 46].

24.    Ordinary church operations were conducted from the church office building on the date alleged in the indictment, including:

    a.    Receipt and payment of church bills (including insurance payments to a Vermont insurance company);

    b.    Processing and distribution of church employee payroll;

    c.    Procurement of supplies from both local and out-of-state suppliers (including an urn supplier in the State of New York);

    d.    Church staff meetings;

    e.    Receipt of all U.S. mail (including bank statements and cremated human remains);

    f.    Processing financial donations to the church;

    g.    Making donations to causes both national (such as donations sent to after Hurricane Sandy) and international (donations to Jerusalem);

    h.    Making annual payments to the headquarters of the Episcopal Church in the State of New York;

i.      Serving as the location for church administrative staff offices;

j.      Maintenance of church internet presence on Facebook, Twitter, Instagram YouTube, AmazonSmile and a church web site (enabling online donations by bank draft or credit card) so that the church was able to reach a national audience; and

k.      Travel by church employees was arranged and paid through the church office.

*See Reporter's Excerpt Transcript of Motion to Dismiss* at 7-19 [Clerk's Docket No. 46].

25.      St. Stephen's Episcopal Church had regular church attendees and parishioners who maintained primary residences in Colorado and Louisiana on the date alleged in the indictment.  The church also received regular donations from out-of-state parishioners at this time. *See Reporter's Excerpt Transcript of Motion to Dismiss* at 9; 23; 33 [Clerk's Docket No. 46]

26.      The church office building was used for the following non-ordinary church activities that affected interstate commerce on the date alleged in the indictment:

a.      Fee-based after-school and summer childcare programs for approximately 100 children were operated from the church office.  The education associated with these programs did not take place in the church office, but all financial aspects of operating the programs was conducted therefrom, including: employee hiring, employee payroll processing, procurement of supplies, office location for the program director, and receipt of tuition from participants. *See Reporter's Excerpt Transcript of Motion to Dismiss* at 20; 32-33 [Clerk's Docket No. 46].

b.      Fee-based facility rental arrangements of church property for secular uses such as birthday parties, receptions, town hall gatherings, cotillion programs, and other non-church related events were administered from the church office. *See Reporter's Excerpt Transcript of Motion to Dismiss* at 19; 32 [Clerk's Docket No. 46].

## IV.  CONCLUSIONS OF LAW

Mr. Torres is charged with federal arson in violation of 18 U.S.C. § 844(i).  Section 844(i) makes

it a crime to:

> . . . maliciously damage[] or destroy[], or attempt[] to damage or destroy, by means of
> fire or an explosive, any building, vehicle, or other real or personal property used in
> interstate or foreign commerce or in any activity affecting interstate or foreign
> commerce.

It is alleged in Count One that:

> On or about May 10, 2018, in the Eastern District of Texas, the defendant, Jonathan
> Matthew Torres, maliciously damaged and attempted to damage, by means of fire and
> explosives, the building at 4090 Delaware Street, Beaumont, Texas, which was used in
> interstate and foreign commerce and in activities affecting interstate and foreign
> commerce.

*First Superseding Indictment* [Clerk's Docket No. 41].

This Circuit has endorsed form jury instructions for the submission of charges brought pursuant

to Section 844(i).  *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTION (CRIMINAL) 2.37 (2015).  The

offense with which Mr. Torres is charged requires the government to prove the following beyond a

reasonable doubt:

| | |
|---|---|
| *First*: | That Mr. Torres maliciously damaged or attempted to damage the building located at 4090 Delaware Street, Beaumont, Texas; |
| *Second*: | That Mr. Torres did so or attempted to do so by means of fire or an explosive; and |
| *Third*: | That at the time of the fire or explosion or the attempted fire or explosion the property located at 4090 Delaware Street, Beaumont, Texas was used in an activity affecting interstate commerce. |

*Id.*

-14-

FIRST ELEMENT

The Government has proved beyond a reasonable doubt that Mr. Torres maliciously damaged or attempted to damage the building located at 4090 Delaware Street, Beaumont, Texas.  To "maliciously" damage property for purposes of the first element requires proof that Mr. Torres did so "intentionally or with willful disregard of the likelihood" that damage to the property would result from his actions.  *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTION (CRIMINAL) 2.37 (2015).  The evidence presented by the government proves beyond a reasonable doubt that Mr. Torres intentionally constructed, placed, and detonated the explosive device near the St. Stephen's office building on or about May 10, 2018.  The evidence proves he did this with the intention or with willful disregard of the likelihood that damage to the property would result from his actions.  The intentional actions by Mr. Torres damaged the property located at 4090 Delaware Street, Beaumont, Texas by breaking a window and damaging the exterior of the brick facade of the building.

SECOND ELEMENT

The government has also proved beyond a reasonable doubt that Mr. Torres damaged or attempted to damage the building located at 4090 Delaware Street, Beaumont, Texas by means of fire or an explosive.  For the purposes of a charge brought pursuant to Section 844(i), the term "explosive" means:

> gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232[2] of this title, and any chemical compounds, mechanical

---

[2]  "Explosive or incendiary device" is defined in this section as "(A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when

mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

18 U.S.C. § 844(j).  The device placed at 4090 Delaware on May 10, 2018 contained an oxidizing or combustible unit in such proportions, quantities, or packaging that ignition by fire, friction, concussion, percussion, or detonation of the compound could and did cause an explosion.  Two screws found at the scene of the explosion tested positive for nitrate, ammonium and potassium ions, indicating that ammonium nitrate or potassium nitrate was used as an explosive.  A tinfoil packet determined to be the catalyst for a binary explosive used for target practice was found at the scene.  The evidence was entirely consistent with a Tannerite explosion.  This Court therefore concludes the government has proved beyond a reasonable doubt that Mr. Torres damaged or attempted to damage the building located at 4090 Delaware Street, Beaumont, Texas by means of fire or an explosive.

THIRD ELEMENT

The Court also concludes the government proved beyond a reasonable doubt that the property located at 4090 Delaware Street, Beaumont, Texas was used in an activity affecting interstate commerce on the date alleged in the indictment.

To ascertain whether property is "used in an activity affecting" interstate commerce, the fact-finder undertakes a two-step analysis articulated by the Supreme Court in *Jones v. United States,* 529 U.S. 848, 854, 120 S. Ct. 1904, 1910 (2000):  "The proper inquiry . . . 'is into the function of the building

---

ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone." 18.U.S.C. § 232(5).

-16-

itself, and then a determination of whether that function affects interstate commerce."  The high court

clarified that "use in an activity affecting commerce" is "most sensibly read to mean active employment

for commercial purposes, and not merely a passive, passing, or past connection to commerce."  *Jones*

*v. United States*, 529 U.S. at 855, 120 S. Ct. at 1910; *see also United States v. Jiminez*, 256 F.3d 330, 338 (5th

Cir. 2001).

The Fifth Circuit pattern instruction is in accord with *Jones* and provides the following additional

guidance to the fact-finder in language drawn directly from that case:

> A piece of property is "used in an activity affecting interstate commerce" if the property
> is actively employed for commercial purposes and that active employment has an effect
> on interstate commerce.   A piece of property is not used in an activity affecting
> interstate commerce if the property merely has a passive, passing, or past connection to
> commerce. . . .

*See* FIFTH CIRCUIT PATTERN JURY INSTRUCTION (CRIMINAL) 2.37 (2015).

Various courts have considered the propriety of prosecution under Section 844(i) when the

target property is religious in character.  The consensus of these courts is that religious organizations

do not as a general matter operate in a way that places them "in any significant relationship with

commerce, let alone interstate commerce."  *See United States v. Gillespie*, 452 F.3d 1183, 1187-88 (10th

Cir. 2006).  For this reason courts have generally refused to allow prosecutions under the federal arson

statute predicated on commercial activities that relate to "ordinary" church functions.  *See United States*

*v. Johnson*, 246 F.3d 749, 752 (considering procurement of insurance for church building by interstate

carrier, payment of claim for damage to church building by interstate insurance carrier, and church's

membership and transfer of funds to interstate conference);  *United States v. Odom*, 252 F.3d 1289, 1294-

96 (11th Cir. 2001), *cert. denied*, 535 U.S.1058, 122 S. Ct. 1920 (2002)(considering purchase of

publications from out-of state source, use of natural gas originating out-of-state, receipt of donations from out-of-state donors, and payment of dues to interstate organization);  *United States v. Lamont*, 330 F.3d 1249, 1255-57 (9th Cir. 2003)(considering membership in national organization, purchase of goods originating out-of-state, interstate and international transfer of funds, receipt of publications that traveled in interstate commerce).

While ordinary church operations are not sufficient, legislative history reflects Congressional intent that the federal arson statute would protect religious property that satisfies the interstate commerce nexus in some other way.  *See United States v. Jones,* 529 U.S. at 853, 120 S. Ct. at 1910 n. 5. That a building operates primarily for religious purposes does not preclude it from having a commercial function protected by the federal arson law.  *United States v. Terry*, 257 F.3d at 369.  This is true even if the commercial activity in which the organization is engaged does not generate a profit. *See Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 586 n. 18, 117 S .Ct. 1590, 137 L. Ed.2d 852 (1997).  Moreover, structuring an organization as a non-profit entity does not *per se* exclude its properties from the protections of federal arson law.  *Id.*

Court have found that a church building used in connection with the provision of child care services in exchange for payment is actively participating in the interstate commercial market for childcare services, thereby bringing such property within the protections of Section 844(i).  *See Terry*, 257 F.3d at 369-70 ("the effect of the daycare center on interstate commerce is by itself dispositive here"); *see also United States v. Rayborn*, 312 F.3d 229, 235 (6th Cir. 2002)("the operation of a for-fee preschool within the Temple constitutes 'active employment for commercial purposes' such that he function of the building affects interstate commerce").  Additionally, the rental of church facilities has been held

to be a commercial use affecting interstate commerce that would bring a property used for that purpose within the protections of  Section 844(i).  *Russell v. United States*, 471 U.S. 858, 105 S. Ct. 2455 (1985).

Most of the testimony elicited from Reverend Balke concerned use of the church office for ordinary commercial operations of the church, uses which would not support a conviction under 844(i). However, Reverend Balke did provide testimony that the church office was—on the date alleged in the indictment—used to operate fee-based after-school and summer childcare programs and to manage the commercial rental of church facilities to the public.  These two uses of the church office affect the interstate commercial markets in childcare and property rental within the meaning of Section 844(i). .Those connections to interstate commerce were not passive, passing, or prior to the day in question. The church office was therefore employed for commercial purposes and those active uses affected interstate commerce at the relevant time.

The government has therefore proved beyond a reasonable doubt that the church office was used in activities that affected interstate commerce on the date alleged in the indictment.

## V.  CONCLUSION

For these reasons, Defendant Jonathan Matthew Torres is **ADJUDGED GUILTY** of violating 18 U.S.C. § 844(i) as charged in Count One of the *First Superseding Indictment* [Clerk's Docket No. 41].

**SIGNED** this the **15** day of **January, 2020.**

Thad Heartfield
United States District Judge

-19-